IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:10-cv-03029-NKL |
| ) | |
| FRED AND DORIS-JUNE NEAL, ) | |
| ) | |
| Defendants. ) | |

ORDER

The United States seeks declaratory and injunctive relief against Fred and Doris-June Neal for the filing of bogus debt instruments and fake legal documents against federal officials and employees. Pending before the Court is the United States' Motion for Summary Judgment. [Doc. # 11]. For the following reasons, the United States' Motion for Summary Judgment is GRANTED.

**I.      Factual and Procedural Background**

Although the Neals are proceeding pro se, they are still required to comply with the federal rules of civil procedure, as well as this Court's local rules. *See Beavers v. Bretherick*, 227 Fed. Appx. 518 (8th Cir. 2007) (citing *Jackson v. Ark. Dep't of Educ., Vocational & Technical Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001) (citing Arkansas local rule 56.1(c) in concluding that the plaintiff forfeited her right to contest facts when she failed to respond to the defendant's summary judgment motion), *cert. denied*, 536 U.S. 908 (2002)). Because the Neals failed to respond to the United States' statement of

facts, the Court will deem those facts admitted under Local Rule 56.1(c) of the Eastern and Western Districts of Arkansas.

On December 7, 2007, the United States filed two lawsuits against the Neals to foreclose certain tax liens, and to set aside the Neals' fraudulent transfer of real property. [Doc. #13, ¶¶ 1, 21]; *United States v. Fred Neal*, No. 3:07-cv-03061 (W.D. Ark. 2007); *United States v. Ultra Dimensions John Sinclair as Trustee*, No. 2:07-cv-536 (E.D. Tex. 2007) . On May 14, 2008, in the Arkansas case, the Neals filed a "Due Presentment Under Notary Seal Demand for Payment," purporting to settle the Arkansas case with a bogus promissory note (#FNJ1015), which stated that the Neals were entitled to draw $50 million from a secret bond account held in their names by the U.S. Treasury. [Docs. #13, ¶ 5; # 13-5, at 1]. A copy of the bogus promissory note was attached to each of the Neals' "Due Presentment" documents along with a fictitious IRS Forms 1099-OID. [Doc. #13, ¶¶ 4, 7].  Several federal employees, including United States District Court Judge Jimm Larry Hendren, Christopher Johnson, the Clerk of the Western District of Arkansas, and Stephanie Page, a Department of Justice Attorney, were falsely named as "co-fiduciary trustees" of Fred Neal's bogus promissory note. [Doc. #13, ¶ 6].

The Neals filed a similar bogus promissory note (#FNJ1013) in the Texas case, [Doc. #13, ¶¶ 22, 23, 24]. The alleged "co-fiduciary trustees" of this bogus note were, David Maland, Clerk of the United States District Court for the Eastern District of Texas, Joshua Smeltzer, a Justice Department lawyer, and IRS employees Robert Lance Halbert, Frances Grantham, Marcus Johnston, and Lisa Taylor. [Doc. #13, ¶ 23]. The Neals also

filed a letter which identified Mr. Halbert as a "rogue" agent who had failed to settle their "account" in the Texas case. [Doc. #13, ¶ 22].

On May 19, 2008, Mary Coultas-Crosswhite, a Notary Public in Marion County, Arkansas, mailed a letter to Judge Hendren on the Neals' behalf, claiming that the "co-fiduciary trustees" of note #FNJ1015 had not "performed" their alleged duties. [Doc. #13, ¶ 8]. Shortly afterwards, Judge Hendren recused himself from the Arkansas case. [Doc. #13, ¶ 9]. In his recusal order, Judge Hendren described the bonded promissory notes and other filings as "patently false" with respect to him, Stephanie Page, and Christopher Johnson. [Doc. #13, ¶ 9].

On September 8, 2008, the Neals filed "Certificates of Non-Performance" in Boone County, Arkansas for each of the "bonded promissory notes" which had been filed in the Arkansas and Texas cases.[1] [Doc. #13, ¶¶ 27-30]. The Neals claimed that each of these "certificates of non-performance" evidenced a $50 million liability against the listed co-fiduciaries because they did not present the notes to the Secretary of the Treasury as payment for the Neals' taxes. [Docs. #13, ¶¶ 27-30; #13-7, at 108-09]. The $50 million figure for each of the promissory notes was a number contrived by Fred Neal in order to get "somebody's attention." [Docs. #13, ¶ 5; #13-7, at 110:4-5; 111:11-14].

On December 9, 2008 in the Arkansas case, the United States moved for summary judgment. In response, the Neals mailed documents to the Clerk of the Court alleging that the case had been settled through the issuance of "Bonded Promissory Note FNJ1019"

---

[1] These are identified as #FNJ1015, #FNJ1013, #FNJ1019, and #DJNG1005.

and "Bonded Promissory Note DJNG1005," each dated October 30, 2008 and each in the amount of $50 million. The District Court for the Western District of Arkansas ordered the Clerk not to file the documents because they "lack[] a factual and legal basis and appear[] to have been pursued in order to harass all involved and delay this proceeding." [Docs. #13, ¶ 11; 13-10, at 1-2]. On December 30, 2008, an order granting summary judgment in favor of the United States was entered by the District Court for the Western District of Arkansas. The district court found that as of December 4, 2007, the Neals' combined liability was slightly under $1.6 million. The district court further found that the property transfers at issue were fraudulent in nature and ordered that the property be sold to satisfy the Neals' tax liabilities. [Doc. #13, ¶ 12].

The Neals filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of Arkansas within a week of the District Court's judgment. No. 3:09-bk-70014. On March 18, 2009, the bankruptcy court dismissed the Chapter 13 proceeding because the Neals did not satisfy the eligibility requirements. [Doc. #13, ¶ 13]. In June 2009, the Neals filed in the Circuit Court of Boone County, Arkansas $820 million worth of maritime liens against eleven individuals who were in some way involved in the Arkansas case, Texas case, or the Neals' bankruptcy proceedings. [Docs. #13, ¶ 14; #13-13, at 5-38].

On June 24, 2009, the Neals filed for Chapter 11 bankruptcy with the same bankruptcy court, no. 3:09-bk-73097, and listed the liens among their assets. The United States moved to dismiss the Neals' Chapter 11 proceeding on the ground that the Neals

4

filed for bankruptcy solely in order to evade collection of their federal income tax liabilities. [Doc. #13, ¶ 16]. On February 5, 2010, Judge Ben T. Barry dismissed the bankruptcy proceeding. He found that the proceeding was based on a "faulty premise." He also prohibited the Neals from filing another bankruptcy proceeding in any jurisdiction for 180 days, ordered the Neals to cease filing any additional "fraudulent" and "fake" maritime liens in any jurisdiction, and warned Fred Neal that if he continued to harass judges and other government officials he could be criminally prosecuted. [Doc. #13, ¶ 18]. He stated in his written order that the Neals had "used the bankruptcy code to improperly delay the IRS from enforcing the judgment entered in the [Arkansas case]." [Docs. #13, ¶ 19; 13-15, ¶ 2]. He further ordered that the Neals would be in contempt of court if they file "in any jurisdiction any lien, maritime or otherwise, or any other similar document purporting to claim an obligation" by any IRS employee or any of the officials involved in the Neals' bankruptcy cases, the Arkansas case, or the Texas case. [Doc. #13, ¶ 20].

Throughout the Neals' court proceedings, Fred Neal has accused the courts of depriving him of his rights, "misprision of felony," and other criminal acts, and has threatened officers of the Court with criminal sanctions. [Doc. #13, ¶¶ 15, 25]. Additionally, Fred Neal testified that he intends to file additional liens in the home counties of the individuals against whom he already filed maritime liens, fully aware that such liens will impact the individuals by preventing them from selling their homes. [Doc. #13-7, at 112:10-25; 113:1-5]. IRS Officer Halbert, who was assigned to investigate and

collect on the Neals' tax liabilities, stated that due to the Neal's purported lien against him, he has received debt collector calls and is concerned that the lien has negatively impacted his credit rating and his ability to purchase and convey property. [Doc. #13-25, ¶¶ 3-5].

## II.   Subject Matter Jurisdiction

Pursuant to 26 U.S.C. § 7402(a), the Court has jurisdiction:

> to make and issue in civil actions, writs and orders of injunction, . . . and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.

Section 7402 provides the Court authority to enjoin a taxpayer's interference with tax enforcement, including harassment of government employees and to void "liens imposed by taxpayers on the property of government officials assigned to collect delinquent taxes." *See United States v. Hart*, 701 F.2d 749, 750 (8th Cir. 1983); *Ryan v. Bilby*, 764 F.2d 1325, 1327 (9th Cir. 1985).

## III.   Discussion

The United States asks the Court to declare the Neals' maritime liens, bonded promissory notes, and certificates of non-performance null, void, and without legal effect. It also seeks a permanent injunction under 26 U.S.C. § 7402 to prevent the Neals from further violating the Internal Revenue Code and from causing additional specified harm to federal employees, judicial officials, and the United States.

By failing to respond to the United States' motion, the Neals have admitted that the liens, notes, and certificates of non-performance are all fraudulent. Moreover, each of the eleven individuals against whom the Neals have filed maritime liens and the individuals named by the Neals as co-fiduciaries on their bonded promissory notes have had no personal or private relationship or contacts of any nature with Defendants Fred or Doris-June Neal. The only contact which these individuals have had with the Neals has arisen out of the substance and proceedings of the Arkansas case, the Texas case, and the Neals' bankruptcy proceedings. Notably, several of the notes and liens were filed by the Neals in response to court proceedings in both Arkansas and Texas. [*See e.g.*, Docs. # 13-8, at 10 (Note # FNJ1015 referencing "US District Court Case 07-3061"); #13-17, at 35 (Note # FNJ1013 referencing "US District Court Case No. 2:07-536"); #13-13, at 5-38 (maritime liens referencing bonded promissory notes)]. Thus, the facts do not show any "substance of an agreement" that could form the basis of any valid lien. *See Camp v. Park*, 295 S.W.2d 613, 615 (Ark. 1956) ("Equity . . . looks . . . to the substance of an agreement" to determine if a lien follows.). Additionally, Fred Neal testified to making up the $50 million amount on the bonded promissory notes.

Therefore, it is clear as a matter of law, that the maritime liens, bonded promissory notes, and certificates of non-performance are all false, recorded by the Neals to harass employees and officers of the United States as well as to delay enforcement of internal revenue laws. Therefore the Court declares them null, void, and without legal effect.

Further, the Court finds that it is "necessary and appropriate" to enjoin the Neals from filing fictitious documents in the future. The traditional factors for considering whether an injunction should issue are (1) the threat of irreparable harm to the movant in the absence of an injunction; (2) the balance between such harm and the injury that granting the injunction will inflict on other party litigants; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981). All of these factors weigh heavily in favor of an injunction. First, any federal employee named by the Neals in their fictitious documents will suffer harm, as evidenced by the harm already caused by the Neals' actions–harassing calls from collection agencies and interference with property rights. Such harm to employees disrupts an employees' ability to discharge their responsibilities to enforce the federal tax laws. Second, this harm clearly outweighs the complete lack of harm incurred by the Neals if they are enjoined from filing fictitious documents. Third, the Court has already determined that the United States has succeeded on the underlying merits of its case when it declared that the Neals' documents were null and void. Fourth, it is in the public interest that federal tax laws be fairly and orderly administered and that harassing behavior be stopped.

The Neals have flouted the authority of the Internal Revenue Service and the federal courts by repeatedly filing false documents in order to escape enforcement of revenue laws. To prevent the recurrence of such conduct, the Court enjoins the Neals

from any future filings of fictitious documents. *See United States v. White*, 769 F.2d 511, 515 (8th Cir. 1985) (citing *United States v. Landsberger*, 692 F.2d 501, 503-04 (8th Cir. 1982) (affirming permanent injunction of fraudulent and deceptive conduct that substantially interfered with proper administration of tax laws pursuant to 26 U.S.C. §§ 7402(a), 7404)).

### III. Conclusion

Accordingly, it is hereby

ORDERED that the United States' Motion for Summary Judgment [Doc. # 11] is GRANTED. It is declared that the following documents filed by either Fred or Doris-June Neal or both in the records of Boone County, Arkansas are null and void:

1) Eleven maritime liens filed by Fred Neal with the Circuit Clerk of Boone County, Arkansas, on June 19, 2009. The liens are recorded as book numbers 09-110 through 09-117. (Statement of Material Facts, ¶ 14)

2) A "Certificate of Non-Performance" purporting to evidence a $50 million liability for "dishonor" of Fred Neal's "Bonded Promissory Note FNJ1015." This document was filed on September 5, 2008 and is recorded in the Boone County, Arkansas, records at L08C 03418. (Statement of Material Facts, ¶ 27).

3) A "Certificate of Non-Performance" purporting to evidence a $50 million liability for "dishonor" of Fred Neal's "Bonded Promissory Note FNJ1013." This document was filed on September 5, 2008 and is recorded in the Boone County, Arkansas, records at L08C 03420. (Statement of Material Facts, ¶ 28).

4) A "Certificate of Non-Performance" purporting to evidence a $50 million liability for "dishonor" of Fred Neal's "Bonded Promissory Note FNJ1019." This document was filed on November 17, 2008 and is recorded in the Boone County, Arkansas, records at J08C 04575. (Statement of Material Facts, ¶ 29).

5) A "Certificate of Non-Performance" purporting to evidence a $50 million liability for "dishonor" of Doris-June Neal's "Bonded Promissory Note DJNG1005." This document was filed on November 17, 2008 and is recorded in the Boone County, Arkansas, records at J08C 04576. (Statement of Material Facts, ¶ 30).

      Fred and Doris-June Neal are permanently enjoyed from filing, publishing, or causing to be published or filed, any similar bogus debt instruments or fictitious legal documents against federal employees.

s/ NANETTE K. LAUGHREY  
NANETTE K. LAUGHREY  
United States District Judge

Dated: January 24, 2011  
Jefferson City, Missouri